**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADELE FOX, individually and to the extent she purports to represent a class of those similarly situated, and SUSANNE STONE MARSHALL, individually and to the extent she purports to represent a class of those similarly situated,<br><br>                    Defendants. | Adv. Pro. No. 10-_____ (BRL) |

**COMPLAINT**

Irving H. Picard, Esq., as trustee (the "Trustee") for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") and Bernard L. Madoff ("Madoff"), by and through his undersigned counsel, for his Complaint, alleges as follows:

## NATURE OF THE ACTION

1.      The Trustee commenced this adversary proceeding to ensure that assets of BLMIS that the Trustee seeks to recover in his action against the Estate of Jeffry M. Picower and related entities (the "Picower Defendants") are available for distribution to the victims of Madoff's massive Ponzi scheme in a fair and efficient manner consistent with SIPA and the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").    The defendants herein, Adele Fox ("Fox") and Susanne Stone Marshall ("Marshall") (collectively, the "Florida Plaintiffs"), are plaintiffs in actions filed in the United States District Court for the Southern District of Florida, West Palm Beach Division, Case No. 10-80252 and Case No. 10-80254 (the "Florida Actions") against the Picower Defendants. The Florida Plaintiffs' allegations substantially mirror the Trustee's action against the Picower Defendants currently before this Court.

2.      In early December 2008, BLMIS generated client account statements for its approximately 4,900 client accounts.  When added together, these statements purported to show that clients of BLMIS had approximately $64.8 billion invested with BLMIS.  In reality, BLMIS only had assets on hand worth a small fraction of that amount.  On March 12, 2009, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]" (Plea Hr'g Tr. At 23:14-17) and pled guilty to an 11 count criminal information filed against

him.  On June 29, 2009, Madoff was sentenced to serve 150 years in federal prison for his crimes and was ordered to make restitution to his victims.

3.      The Trustee, pursuant to his duties under SIPA, is working to locate, marshal and preserve customer property to maximize recovery for all of BLMIS' defrauded customers.  Part of this recovery process involves identifying those individuals and entities who received avoidable transfers from BLMIS and attempting to recover these funds for the statutory *pro rata* distribution to all customers.

4.      To date, the Trustee has commenced several actions to recover billions of dollars of transferred funds, such as the Trustee's action against the Picower Defendants.  However, the Florida Actions threaten to thwart the Trustee's efforts, as Fox and Marshall seek to recover fictitious profits for themselves and purported classes of BLMIS customers directly from the Picower Defendants, instead of more appropriately through the equitable distribution process in the SIPA proceeding. To allow the Florida Actions to proceed would frustrate the claims administration process established by this Court, allowing those who filed their own separate lawsuits to potentially recover more than other customers, while at the same time, usurping the Trustee's authority and divesting him of his power to marshal and collect customer property for equitable distribution. The Florida Actions must be enjoined, as the Florida Plaintiffs' conduct is an affront to this Court's jurisdiction and willfully disregards the automatic stay provisions of the Bankruptcy Code.

5.      The Florida Actions also must be enjoined because those actions threaten to impede the Trustee's impending settlement with the Picower Defendants. The Trustee has been involved in months of negotiations with the Picower Defendants in an attempt to maximize recovery of customer property for the benefit of all BLMIS customers and other creditors.

Interfering with this process would undermine the Trustee's efforts, and hinder the Trustee's ability to recover BLMIS assets from the Picower Defendants.

6.     The Florida Plaintiffs are attempting to move the Florida Actions along quickly, in an obvious attempt to ensure that other class action counsel do not usurp their class actions through the filing of copy-cat actions.  On March 24, 2010, the Florida Plaintiffs moved the Florida Court to transfer all similar actions to *that* court, and further requested a hearing on the propriety of such a consolidation.  It is likely that the federal court judge in Florida knows little if anything about this Court's March 1, 2010 Net Equity Decision and March 8, 2010 Order or its continuing jurisdiction over issues related to that Decision and Order.  Nor does it appear that that court knows about the Florida Plaintiffs' efforts to circumvent this Court's jurisdiction or the imminent settlement between the Trustee and the Picower Defendants.  Before the Florida Court gets involved in matters that impinge on this Court's jurisdiction, this Court must assert its authority and restrain the Florida Plaintiffs from prosecuting the Florida Actions until this Court decides whether the Florida Plaintiffs have violated the automatic stay or otherwise decides to preliminarily enjoin the Florida Plaintiffs and their counsel from proceeding.

7.     Accordingly, the Trustee respectfully requests that the Court: (i) declare that the Florida Actions violate the automatic stay and are void *ab initio*; (ii) issue an injunction prohibiting the Florida Plaintiffs and those acting in concert or participation with them, or on their behalf, and the other parties, from pursuing the Florida Actions, or any other actions, against the Picower Defendants, pending the completion of the Trustee's settlement with the Picower Defendants and a final order approving it; and (iii) issue a temporary restraining order, prohibiting the Florida Plaintiffs and their counsel from proceeding with the Florida Actions

until this Court renders a decision on whether the Florida Actions violate the automatic stay and should therefore be enjoined.

## JURISDICTION AND VENUE

8.       This is an adversary proceeding brought in this Court—the Court in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (Substantively Consolidated) is pending.  The SIPA proceeding is a combined proceeding with the Securities and Exchange Commission (the "SEC") and was originally brought in the United States District Court for the Southern District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding") prior to its removal to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and sections 78eee(b)(2)(A) and (b)(4) of SIPA.

9.       This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

10.      Venue in this district is proper under 28 U.S.C. § 1409.

11.      Fox and Marshall have availed themselves of this Court's jurisdiction by submitting claims to BLMIS customer property in the underlying liquidation proceeding.

## BACKGROUND, THE TRUSTEE AND STANDING

12.      On December 11, 2008 (the "Filing Date"),[1] Madoff was arrested by federal agents and criminally charged with a multi-billion dollar securities fraud scheme in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b-5 in the United States District Court for the Southern District of New York (the "District Court"), captioned *United States v. Madoff*, No. 08 MAG 2735.[2]  Contemporaneously, the SEC filed a complaint in the District Court against,

---

[1] December 11, 2008 is the Filing Date because this is also the date on which the SEC commenced its suit against BLMIS, resulting in the appointment of a receiver for the firm. *See* section 78*lll*(7)(B) of SIPA.
[2] On March 10, 2009, the criminal case was transferred to Judge Denny Chin in the District Court and was assigned a new docket number, No. 09 CR 213 (DC).

among others, Madoff and BLMIS (Case No. 09-CV-10791) (the "SEC Action"). The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

13.     On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(4)(B) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

14.     Also on December 15, 2008, the District Court granted the SIPC application and entered a Protective Decree, which was consented to by BLMIS. The Decree, in pertinent part: (1) appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA; (2) appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (3) removed the case to this Bankruptcy Court pursuant to section 78eee(b)(4) of SIPA.

15.     By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

16.     On March 12, 2009, Madoff pled guilty to an 11-count criminal information. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See United States v. Madoff*, No. 09 CR 213 (DC), Docket No. 57, Plea Hr'g Tr. at 23:14-17.

17.    On April 13, 2009 an involuntary bankruptcy petition was filed against Madoff, and on June 9, 2009, this Court entered an order substantively consolidating the chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

18.    As a trustee appointed under SIPA, the Trustee has the statutory job of recovering and distributing customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and all of its creditors.    Consequently, the Trustee must use his authority under section 78fff-2(c)(3) of SIPA and the relevant Bankruptcy Code provisions to pursue available assets.    The Trustee is in the process of marshalling the assets of BLMIS and Madoff, and the liquidation of these assets is well underway.    To date, the Trustee has recovered more than $1.4 billion in assets.    However, such assets will not be sufficient to reimburse fully the customers of BLMIS for the billions of dollars that they invested over the years.

19.    On June 29, 2009, Madoff was sentenced to 150 years of imprisonment for his crimes and was ordered to make restitution to his victims.

20.    On September 24, 2009, the District Court found that restitution was impracticable and ordered that the "[t]he Government may proceed through the process of remission as authorized under the forfeiture statutes.    21 U.S.C. § 853(i); 28 C.F.R. Part 9." *United States v. Madoff*, No. 09 CR 213 (DC), Docket Entry 106, Order dated September 24, 2009.  A motion for reconsideration of this decision was denied on October 27, 2009.

## THE PONZI SCHEME

21.    Madoff founded BLMIS in 1960.    Until his arrest, Madoff was the sole member and chairman of BLMIS.    BLMIS had its principal place of business in New York and engaged in three primary types of business:    market making, proprietary trading and investment advisory services.    BLMIS was registered with the SEC as a broker-dealer and then registered in 2006 as

an investment adviser.  Pursuant to its registration as a broker-dealer, BLMIS was a member of SIPC.

22.    Madoff solicited billions of dollars under false pretenses and failed to invest investors' money as promised.  Instead, he deposited investors' money in a bank account at J.P. Morgan Chase Manhattan Bank.  *See* Madoff Allocution at p. 1.  Madoff represented to clients and prospective clients that he would invest their money in shares of common stock, options and other securities and would, at their request, return profit and principal.  *See id.*  As the world is now aware, virtually no securities were purchased by Madoff for his customers.

23.    By early December 2008, BLMIS generated client account statements for its approximately 4,900 active customer accounts.   When added together, these statements erroneously showed that the customers of BLMIS had approximately $64.8 billion invested with BLMIS.  In reality, BLMIS had assets on hand worth only a small fraction of that amount.  Madoff's massive Ponzi scheme imploded and came to an end on December 11, 2008, the date on which he was arrested.

**THE SIPA TRUSTEE'S AUTHORITY**

24.    Appointed under SIPA, the Trustee is charged with recovering and distributing customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  Pursuant to section 78fff-1(a) of SIPA, the Trustee has the general powers of a bankruptcy trustee in addition to the powers granted by SIPA.  Pursuant to section 78fff(b) of SIPA, Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case.

**THE COURT-ORDERED CLAIMS ADMINISTRATION PROCESS**

25.    The Trustee sought and obtained a Court order to implement a customer claims process in accordance with SIPA.

26.     Pursuant to an application of the Trustee dated December 21, 2008 (Dkt. No. 8), this Court entered the Claims Procedures Order (Dkt. No. 12), which directed, among other things, that on or before January 9, 2009: (a) a notice of the commencement of this SIPA proceeding be published in all editions of <u>The New York Times</u>, <u>The Wall Street Journal</u>, <u>The Financial Times</u>, <u>USA Today</u>, <u>Jerusalem Post</u> and <u>Ye'diot Achronot</u>; (b) notice of the liquidation proceeding and claims procedure be given to persons who appear to have been customers of BLMIS by mailing to each such person, at the last known address appearing on the books of BLMIS, a copy of the notice, proof of claim form and instructional materials approved by the Court; (c) notice of the liquidation proceeding and a claim form be mailed to all known general creditors of BLMIS; and (d) notice be given of the hearing on disinterestedness of the Trustee and his counsel (*see* section 78eee(b)(6) of SIPA) scheduled for February 4, 2009 and the meeting of creditors, scheduled for February 20, 2009.

27.     More than 16,000 potential customers, general creditor and broker-dealer claimants, including the Florida Plaintiffs, were included in the mailing of the Notice.

28.     The Trustee published the Notice in all editions of <u>The New York Times</u>, <u>The Wall Street Journal</u>, <u>The Financial Times</u>, <u>USA Today</u>, <u>Jerusalem Post</u> and <u>Ye-diot Achronot</u> by January 2, 2009.   The Trustee also posted claim forms and claims filing information on the Trustee's website ("Trustee Website"), and SIPC's website.

29.     Under the Claims Procedures Order, claimants were directed to mail their claims to the Trustee. All customers and creditors were notified of the mandatory statutory bar date for filing of claims under section 78fff-2(a)(3) of SIPA, which was July 2, 2009 (the "Bar Date").

30.     On May 21, 2009, the Trustee mailed a reminder notice to customers who had not yet filed a claim that the Bar Date was July 2, 2009.

31.    On June 22, 2009, the Trustee mailed a final Bar Date reminder notice (the "Final Reminder Notice") to 7,766 known past and present customers of BLMIS from whom a claim had not yet been received.  In addition, the Trustee posted the Final Reminder Notice on the Trustee Website.

32.    In the Final Reminder Notice, the Trustee acknowledged that certain litigation had been filed regarding the Trustee's definition of "net equity" under SIPA and that this Court's decision on this issue may affect whether or not certain customers have an allowed claim in this proceeding.  Because the Trustee was concerned that some claimants might mistakenly rely on the litigation and not file claims by July 2, 2009, the Trustee urged all customers to file a claim before that date in order to preserve their rights to participate in a distribution from the estate.

33.    By the Bar Date, the Trustee had received 16,239 customer claims.

34.    In accordance with the Claims Procedures Order, the Trustee has developed a comprehensive claims administration process for the intake, reconciliation, and resolution of these customer claims.

## THE NET EQUITY PROCEEDINGS

35.    The statutory framework for the satisfaction of customer claims in a SIPA liquidation proceeding provides that customers share *pro rata* in customer property to the extent of their net equity, as defined in section 78*lll*(11) of SIPA.

36.    SIPC advances funds to the Trustee for a customer with a valid net equity claim, up to the amount of their net equity, if their ratable share of customer property is insufficient to make them whole.

37.    The Trustee has determined each customer's net equity by crediting the amount of cash deposited by the customer into his or her or its BLMIS account, less any amounts withdrawn from the account, otherwise known as the "Net Investment Method."  After certain

claimants objected to the Trustee's interpretation of net equity, the Trustee moved for a briefing schedule and hearing on the matter, and an order followed (the "Scheduling Order").

38.     In accordance with the Claims Procedures Order and the Scheduling Order, on October 16, 2009, the Trustee submitted his memoranda of law and other papers in support of his motion for an order (a) upholding the Trustee's determinations denying 78 customer claims for the amounts listed on the last customer statement, (b) affirming the Trustee's determination of net equity and (c) expunging those objections with respect to the determinations relating to net equity (the "Net Equity Motion"). (Dkt. No. 525.)  The Trustee argued that the Net Investment Method of calculating net equity is the only one consistent with SIPA, bankruptcy law, principles of equity, and common sense.  Over thirty briefs and twenty *pro se* submissions were filed in response to the Trustee's Net Equity Motion.  Two customers, SIPC, and the SEC filed papers in support of the Trustee's Net Equity Motion.  Briefing concluded on January 15, 2010 and a hearing was held on February 2, 2010.

39.     On March 1, 2010, the Bankruptcy Court issued its decision on the net equity issue, approving the Trustee's method of determining net equity (the "Net Equity Decision").

40.     In that decision, this Court upheld the Trustee's Net Investment Method of calculating net equity.

41.     In so holding, the Court recognized that the claims of those customers whose withdrawals exceeded their initial investments and subsequent deposits will be denied and they will not be entitled to participate in a distribution from the estate.

42.     The Court determined that the plain language and the legislative history of SIPA support the adoption of the Trustee's method of determining net equity.

43.     The Court also concluded that the Trustee's calculation of net equity is consistent with the avoidance powers available to him under SIPA and the Bankruptcy Code.  Further, the Court noted that both equity and practicality favor utilizing the method proposed by the Trustee.

44.     On March 8, 2010, the Court issued an order affirming the Trustee's net equity calculation (the "Net Equity Order").  (Dkt. No. 2020.)  On that same date, the Court also certified an appeal of the Net Equity Order directly to the United States Court for the Second Circuit Court of Appeals.  (Dkt. No. 2022.)  Notices of appeal of the Net Equity Order have been filed by counsel for a number of customers, including by counsel for Fox and Marshall.

## COUNSEL FOR FOX AND MARSHALL PARTICIPATED IN THE NET EQUITY PROCEEDINGS

45.     Fox and Marshall are represented by the same three law firms in their respective actions.  Counsel from Becker & Poliakoff, Ms. Helen Chaitman, was formerly with the law firm of Phillips Nizer LLP, and has been actively involved in this matter from its inception.  In addition to Fox and Marshall, Ms. Chaitman purports to represent hundreds of Madoff claimants, as well as being an investor in Madoff herself.

46.     In accordance with the Scheduling Order, Ms. Chaitman filed a brief in opposition to the Trustee's Net Equity Motion and an accompanying declaration on November 13, 2010. (Dkt. Nos. 755 and 761, respectively.)

47.     Ms. Chaitman also filed a reply brief in response to the brief filed by the SEC on December 21, 2009.  (Dkt. No. 1096.)

48.     Finally, Ms. Chaitman made an appearance and argued at the hearing before the Bankruptcy Court on behalf of her clients.  While neither Fox nor Marshall was specifically identified as Ms. Chaitman's clients in the papers she filed in connection with the net equity

dispute, Ms. Chaitman referenced her representation of Fox during the hearing before the Bankruptcy Court on February 2, 2010.

## FOX AND MARSHALL HAVE FILED CUSTOMER CLAIMS

49.     Both Fox and Marshall have taken advantage of the claims procedure described above and have filed claims in the BLMIS liquidation proceedings for some, but not all, of their respective accounts.

50.     Marshall filed a claim with respect to her account on January 14, 2009.  It was allowed by the Trustee in the amount of $30,000 on July 24, 2009.

51.     Marshall received a payment from the Trustee with funds advanced by SIPC against her net equity claim, which was paid to her on August 21, 2009 after she executed a partial assignment and release.

52.     Marshall did not file an objection to the Trustee's determination of her claim within the thirty-day period prescribed by the Claims Procedures Order.

53.     Fox is associated with seven BLMIS accounts.  Claims were filed for two of the seven BLMIS accounts with which she is associated.  As these accounts are still being investigated by the Trustee, he has not issued determinations for the two Fox accounts for which she filed claims.

54.     Thus, Fox and Marshall are actively participating in the BLMIS liquidation proceeding and submitted themselves to the jurisdiction of the Bankruptcy Court as BLMIS claimants, as evidenced by the filing of their customer claims.

## FOX, MARSHALL, AND THEIR COUNSEL SEEK TO SUBVERT THE NET EQUITY DETERMINATION

55.     As discussed above, counsel for Fox and Marshall directly participated in the net equity dispute before the Bankruptcy Court.

56.     The ruling issued by the Bankruptcy Court upholding the Trustee's Net Investment Method of calculating net equity mandates the rejection of the balances shown on the last customer statements.  Instead, claims will be valued using the Net Investment Method.  This means that those customers who withdrew more funds than they deposited over the life of their account will have their claims denied (if they have not already been denied).

57.     The claims of customers with a positive net investment will be allowed; however, they will be allowed only the amounts of their net investment, without regard to the fictitious profits their accounts reflected.

58.     On February 16, 2010, Fox commenced a putative class action against the Picower Estate and related entities in the United States District Court for the Southern District of Florida, West Palm Beach Division (the "Southern District of Florida") on her own behalf and on behalf of a similarly situated class of plaintiffs. Fox amended her Complaint on March 15, 2010.

59.     The Fox Complaint describes the putative class as "all persons or entities who have maintained customer accounts with BLMIS who are not SIPA Payees and who have not received the net account value scheduled in their BLMIS accounts as of the day before the commencement of the SIPA Liquidation."  (Fox Cmplt at ¶ 74.)

60.     Similarly, on February 17, 2010, Marshall commenced a class action against the Picower Estate in the Southern District of Florida on her own behalf and on behalf of a similarly situated class of plaintiffs. Marshall amended her Complaint on March 15, 2010.

61.     The Marshall Complaint describes the putative class of plaintiffs that Marshall represents as "all SIPA Payees, but only with respect to claims, or portions thereof, not assigned to the Trustee."  (Marshall Cmplt at ¶ 74.)[3]

---

[3]    This description is internally inconsistent with the Marshall Complaint's definition of the class members at paragraph 4 thereof, which identifies the class as "BLMIS account holders who had their SIPA claims disallowed in

62.     In essence, these two proposed classes represent those claimants disagreeing with this Court's Net Equity Decision.

63.     The Bankruptcy Court issued its Net Equity Decision after a careful analysis of the plain meaning and legislative history of the statute, controlling Second Circuit precedent, and considerations of equity and practicality.

64.     By bringing these actions, Fox and Marshall are attempting to recover that which they cannot recover in the main bankruptcy proceeding as a result of a binding judicial determination regarding the proper interpretation of net equity.  Though styled differently, the Fox and Marshall Complaints are an end-run around the Net Equity Decision issued by the Bankruptcy Court.

## THE ALLEGATIONS IN THE FLORIDA ACTIONS MIRROR THOSE MADE BY THE TRUSTEE

65.     Apart from representing different putative classes, the Fox Complaint and the Marshall Complaint are identical and rely heavily on the facts alleged in the complaint filed by the Trustee in this Court against the Picower Defendants on May 13, 2009 (the "Trustee's Complaint"), taking many of the allegations verbatim.

66.     For example, the Fox and Marshall Complaints:

a.     Rely on the Trustee's identification of the transfers made from BLMIS to the Picower Defendants and even attach the schedule of those transfers prepared by the Trustee as attached to the Trustee's Complaint as Exhibit B.  (Fox Cmplt at ¶ 38 and Exhibit D; Marshall Cmplt at ¶ 38 and Exhibit D.)

---

whole or in part or who have not filed SIPA claims with the Trustee, . . . ."  Marshall Cmplt at ¶ 4.  It is not clear whether the "class" is intended to include customers who did not file a claim with the Trustee, which, of course, Ms. Marshall could not represent under Fed. R. Civ. P. 23.

b.      Rely entirely on the Trustee's allegations to identify the defendants in the Florida Actions.  (*Compare* Trustee's Cmplt at ¶¶ 35–52 *with* Fox Cmplt at ¶¶ 14–31 and Marshall Cmplt at ¶14–31.)

c.      Quote directly from the Trustee's Complaint regarding the Picower Defendants' extraordinarily high annual rates of return.  (*See* Trustee's Cmplt at ¶ 63(a)–(b); Fox Cmplt at ¶ 43 and Marshall Cmplt at ¶ 43.)

d.      Rely on the Trustee's identification of large negative annual rates of return in several of the Picower Defendants' trading accounts.  (*Compare*  Trustee's Cmplt at ¶63(b) *with* Fox Cmplt at ¶ 46 and Marshall Cmplt at ¶ 46.)

e.      Rely entirely on the Trustee's identification and description of the back dating of purported trades in Picower accounts.  (*Compare* Trustee's Cmplt at ¶63(d)–(f) *with* Fox Cmplt at  ¶¶ 55–63 and Marshall Cmplt at ¶¶ 55–63.)

67.      The Fox and Marshall Complaints do not merely incorporate material from the Trustee's Complaint, but expressly rely on the Trustee's allegations to support their claims. (*See, e.g.*, Fox Cmplt at ¶ 41 and Marshall Cmplt at ¶ 41 ("The Trustee's Complaint describes the Defendants' outright theft of cash through BLMIS . . ."); Fox Cmplt at ¶ 59 and Marshall Cmplt at ¶ 59 ("As demonstrated in the Trustee's Complaint, BLMIS records indicate that Picower, Freilich and Madoff employees discussed and clearly understood that the trades in the various Defendants' accounts were being backdated for the purpose of generating phony profits"); Fox Cmplt at ¶ 63 and Marshall Cmplt at ¶ 63 ("Also according to the Trustee, Picower and BLMIS backdated other purported securities transactions during December 2005, including purported purchases on margin of Google, Diamond Offshore Drilling, Inc., and Burlington

Resources, Inc. across several of Defendants' accounts, which resulted in a purported gain for Picower of almost $80 million").)

## THE PICOWER SETTLEMENT

68.     The Trustee and the Picower Defendants are on the verge of a settlement which will inure to the benefit of all of Madoff's customers in accord with this Court's Net Equity Decision.

69.     The Trustee's decision to settle has been guided by information learned during the course of his investigation both prior to and after the filing of the Trustee's Complaint relating to the allegations therein which warrants the proposed settlement.

70.     The pending Florida Actions threaten to interfere with these settlement negotiations to the detriment of all other BLMIS customers.

## FOX'S MOTION TO CONSOLIDATE

71.     On March 24, 2010, counsel for Fox moved the Florida federal judge for an order of consolidation, arguing, among other things, that "other BLMIS account holders may file similar actions (including class actions) against one or more of the Defendants that are related to this class action, and that will raise questions of law and fact that are similar to those at issue in this case. Such cases will likely involve members of the class asserted in this action (Fox) or in Marshall. Any such later-filed cases should be subject to immediate consolidation with this Fox action for the purposes of pretrial proceedings."

72.     Fox and Marshall have further moved for a hearing on such proposed consolidation. A copy of Fox's Request for Hearing Regarding Motion for Order of Consolidation and Scheduling is attached hereto as Ex. D.

## COUNT ONE
## DECLARATORY RELIEF

73.     The Trustee incorporates by reference the allegations contained in paragraphs 1–72 of this Complaint as if fully realleged herein.

74.     The Trustee seeks a declaration that the Florida actions violate the automatic stay under 11 U.S.C. § 362(a) and are therefore void *ab initio*. This declaratory relief is warranted for, but not limited to, the following reasons:

       a.      By seeking to recover damages from the Picower Defendants, the Florida Actions improperly contravene the claims administration process in the SIPA proceeding and side-step the Trustee's exclusive right to seek recovery of fraudulently transferred property in direct violation of 11 U.S.C. § 362(a)(1) and (6).

       b.      Additionally, the Florida Actions improperly seek to obtain possession of debtor property in direct violation of 11 U.S.C. § 362(a)(3).

75.     The Court has authority pursuant to sections 105(a) and 362(a) of the Bankruptcy Code to issue declaratory relief because this controversy is actual and justiciable, and the Court has jurisdiction over matters affecting BLMIS property and the effective and equitable administration of the debtor estate.

## COUNT TWO
## PRELIMINARY INJUNCTIVE RELIEF

76.     The Trustee incorporates by reference the allegations contained in paragraphs 1–75 of this Complaint as if fully realleged herein.

77.     The Trustee seeks an Order that any further prosecution of the Florida Actions be enjoined pursuant to section 105(a) of the Bankruptcy Code, made relevant to these proceedings by section 78fff(b) of SIPA, until this Court renders its decision on the Trustee's request for

injunctive relief. Specifically, the Trustee requests that this Court enjoin the prosecution of the Florida Actions for, without limitation, the following reasons:

      a.      The Florida Actions improperly infringe on the jurisdiction of this Court. The issues in the Florida Actions arise out of the BLMIS liquidation proceedings, and any funds recovered in those actions have a strong likelihood of consisting of customer property, recoverable by the Trustee pursuant to section 78fff-2(c)(3) of SIPA. As such, the proper forum for the litigation of issues raised in the Florida Actions is this Court.

      b.      To the extent that Fox and Marshall are successful in the Florida Actions, section 78fff-2(c)(1)—which provides for the ratable distribution of customer property to customers—would be violated because Fox and Marshall would receive more than their proportionate share of customer property to the detriment of other similarly situated customers.

      c.      An injunction is needed to prevent duplication of efforts and interference with the Trustee's settlement negotiations with the Picower Defendants. If these settlement negotiations are torpedoed as a result of the Florida Actions, the Trustee, on behalf of all BLMIS customers and other creditors, will suffer irreparable harm.

      d.      There is an inadequate remedy at law to protect and preserve the assets that constitute customer property. The Florida Actions threaten the administration of the liquidation and an injunction is necessary to preserve and protect customer property and the Trustee's efforts to gather and collect customer property for the benefit of the victims who have filed claims.

e.        An injunction will prevent the substantial confusion of other investors and potential plaintiffs with respect to whether they must file separate actions to protect their interests.

f.        An injunction will maximize judicial economy.  Instead of having a court in another jurisdiction considering these issues, this Court, which is already familiar with the relevant facts, can most expeditiously resolve the issues raised in the Florida Actions.

g.        An injunction will avoid the possibility of inconsistent decisions and will ensure preservation of uniformity of decision.

h.        An injunction will allow the Trustee to avoid appearing in the Florida Actions and thus prevent the Trustee from incurring needless litigation costs.

i.        The injunction will not harm the public interest, and, in fact, is in the best interest of BLMIS customers and the orderly administration of the claims administration process.

78.        The Trustee believes that the injunction requested herein is necessary and appropriate to carry out his duties in accordance with the provisions of SIPA and the Bankruptcy Code and that any further prosecution of the Florida Actions, prior to the completion of the Trustee's Proceedings, would seriously impair and potentially defeat this Court's ability to administer the BLMIS SIPA proceedings.

## COUNT THREE
## TEMPORARY RESTRAINING ORDER

79.        The Trustee incorporates by reference the allegations contained in paragraphs 1–78 of this Complaint as if fully realleged herein.

80.        The Trustee seeks an Order, pursuant to Federal Rule of Bankruptcy Procedure 7065, that any further prosecution of the Florida Actions be temporarily restrained until this

Court rules on the Trustee's request for an injunction pursuant to 11 U.S.C. § 105(a). Specifically, the Trustee requests that this Court temporarily restrain the prosecution of the Florida Actions for, without limitation, the following reasons:

a. In light of the motion for consolidation currently pending before the Florida Court, a temporary restraining order is necessary to prevent a blatant infringement on this Court's jurisdiction—a ruling by the Florida Court that all actions relating to BLMIS and Picower should be before *that* Court. Such infringement would cause the Trustee, on behalf of BLMIS' customers and other creditors, to suffer irreparable harm.

b. In the absence of a temporary restraining order, the Trustee, on behalf of BLMIS' customers and other creditors, will further suffer irreparable harm in the form of interference with the Trustee's settlement discussions with the Picower Defendants, which would ultimately hinder the recovery of customer property.

81. Upon information and belief, the Trustee asserts that the temporary restraining order requested herein is necessary and appropriate to carry out his duties in accordance with the provisions of SIPA and the Bankruptcy Code and that any further prosecution of the Florida Actions, especially with respect to the pending motion to consolidate, would seriously impair and potentially undermine this Court's ability to administer the BLMIS estate.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Fox and Marshall:

*i.* declaring that the Florida Actions violate the automatic stay under 11 U.S.C. § 362(a) and are therefore void *ab initio*;

*ii.* enjoining Fox and Marshall, and those acting in concert or participation with them, or on their behalf, and the other parties, pursuant to section 105(a) of the Bankruptcy

Code, from further prosecuting the Florida Actions, or any other actions against the Picower Defendants, pending the completion of the Trustee's settlement with the Picower Defendants and a final order approving it;

      *iii.*    issuing a temporary restraining order to halt further prosecution of the Florida Actions until such time that this Court has ruled on the Trustee's request for a preliminary injunction; and

*iv.*    granting the Trustee such other relief as the Court deems just and proper.

Date:    New York, New York
         March 30, 2010

        *s/Keith R. Murphy*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Deborah H. Renner
Email: drenner@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Seanna R. Brown
Email: sbrown@bakerlaw.com

*Attorneys for Irving H. Picard, Trustee for the
Substantively Consolidated SIPA Liquidation
of Bernard L. Madoff Investment Securities
LLC and Bernard L. Madoff*